Good morning. If you may please the court, we would like to reserve one minute in case rebuttal is warranted. All right. Thank you. I am attorney Jenny Mariel Espa. I represent with the District Court's determination and we believe it erred in determining the issue of subject matter jurisdiction as a preliminary matter through a motion in limine. Our contention is that this intervention, the facts of this case, when the case began, there was what we call a fast vessel that was located through an aircraft in waters of the Dominican Republic. Thereafter, a U.S. Coast Guard cutter approached and ordered it to heave to. This is the point where we want to stop. The government contends that this was a stateless vessel and thus it fell under the MDLEA's jurisdiction because of statelessness. However, we would like to point to this court the decision of, pardon me, the dissenting opinion in the case of Matos Luchi. By a very fine judge. We believe so too, your honor. We think he was the right one in that decision. But listen, let's go back to they stop the ship, the Coast Guard orders it to heave to. They board the ship? No, your honor. Do they communicate with the ship? They turned on the blue lights and through last... Here's what I'm getting to. Did they attempt to determine whose flag the ship was operating under? Well, your honor... You can answer that with a yes or no. Can't you? I think that it deserves an explanation, but the immediate answer would be... You may not think it was enough of an inquiry, but they made some attempt to determine whose flag this vessel was flying in. Right? That could be inferred, your honor. However, the government has invoked treaties under this case. Can we just settle the facts if we can for a moment before we get on to the piracy clauses of the U.S. Constitution and the maritime drug laws? Very well, your honor. They made an attempt to find out how the vessel was flagged. Yes, your honor. And my understanding is the people on the vessel wouldn't tell them one way or the other. Is that right? No, your honor. That's incorrect. What did they say? They said nothing. At that point, a pursuit was ensued approximately for a number of hours. This intervention began around between 1230 and 1 in the morning, and the actual interdiction occurred at 7 in the morning. But my understanding is that at some point, the government attempted, the Coast Guard attempted to determine from representatives of the Venezuelan government if this vessel was flying under Venezuelan flag. Is that correct? That is true, your honor. And the Venezuelan government, as part of their normal, wonderful relationships with the United States of America, said we won't tell you one way or the other. Correct? That is correct, your honor. And may I continue? Thank you. That happened a number of hours after and a number of nautical miles thereafter. Our point, the particular point that we're trying to make in this case, and the distinction, your honor, is that that determination of statelessness came much more time after the initial contact. And our contention, your honor, and this is where I wanted to point out again to Judge Lipa's opinion, as well as to the treaties, is that at that point, they should have contacted the Dominican Republic and asked for permission under the counter-drug operations treaty. The Dominican Republic, under its sovereignty, retained the power to permit for the U.S. government to intervene with vessels in their territorial waters. Were they actually in Dominican waters or were they just headed for the Dominican Republic? Well, your honor, that is a point of dispute. Our contention is that they were within Dominican waters. And even when they were interdicted, they were within the extended economic zone asserted by the Dominican Republic in its archipelagic and other maritime claims and boundaries. Can I understand the significance of these points? Are these points that are trying to show, notwithstanding our precedent, this is a jurisdictional issue? Yes, your honor. Could you explain why these points make it jurisdictional when the other cases treating issues about the application of this statute in seemingly analogous circumstances were held to be not jurisdictional? Well, your honor, the Maritime Drug Enforcement Act sets a particular standards to be able to assume that jurisdiction. And because statelessness is one of those... Just so I get it, they require certain things for the act to apply. Yes, correct. Yes, for the act to apply. Right, but you're trying to say that question of whether the determination is made is different than whether it was constitutional authority to pass the statute. Is that your point? Yes, but in a manner of speaking, I think it's one and the same. Well, if it's one and the same, doesn't our precedent say that these are not jurisdictional questions in terms of being able to get around a waiver and a plea or a lack of timeliness in filing a motion to dismiss? Your honor, if I may address that, it is true that it wasn't filed on a timely manner. However, this was a complex case and there was copious amounts of discovery, and we informed the court that to be able to make... I just want to... I'm not saying whether you have a good reason to have filed it late. I'm just saying our precedent, as I read it, I don't think you'd disagree with this, suggests that the question of whether the statute can constitutionally exist does not go to the plea. I thought that's what we have held. And then similarly, that might also go to the question of whether the lateness of the motion to dismiss can be excused, because it could be excused if it's a jurisdictional question, but not if it's not. Yes, your honor. But so given that precedent, what are you offering that distinguishes that precedent? What about this case makes it jurisdictional, even though other cases that have said that the statute, that have raised the issue whether the statute could constitutionally have been enacted at all, was not jurisdictional? Well, your honor, the distinction that we're trying to make in terms of that it was jurisdiction is that the MDLEA gives jurisdiction of the United States over certain types of vessels, and our contention is that the determination of statelessness was done much after that first intervention. And under the treaties and under the sovereignty of the Dominican Republic, it should have been contacted before ensuing that pursuit through Dominican waters and all the way to the 128 nautical miles where it was eventually interdicted. And thereafter, they did request, pardon me, the government of Venezuela to make a statement regarding the nationality that one of the members of the crew of the vessel asserted, as is necessary under the MDLEA. And that basically would be the distinction that we're trying to make, your honor. Anything else? No, your honor. Thank you. May it please the court. My name is Tiffany Monrose, and I represent the United States. We ask that you affirm the judgment of the district court for the reasons set forth in our brief. I would like to make sure I understand the facts correctly. Yes. When the vessel was boarded, was it in international waters or was it in the waters of a sovereign    And it was in the waters of a sovereign nation. It was in international waters. It was 128 miles off the coast of the Dominican Republic. And my understanding is once you move 100, I'm sorry, 12 miles off the coast of a country, you're in international waters. It was first detected 46 miles away from the Dominican Republic when it was pursued. And as the appellant has recognized, there was a bilateral agreement between the Dominican Republic, which would permit the United States in hot pursuit to The United States was not in hot pursuit, was it? It was intercepted by the United States Coast Guard and the boarding took place by a vessel of the Kingdom of the Netherlands. According to those facts that I read. Okay. You don't know that? Yes, I do know that there was another vessel involved. What country was that vessel from? I believe it was Holland. I believe I believe the name I was the name of the vessel was Holland, but I didn't think that it was from another country. It was a Dutch warship. Yes, a Dutch warship, Your Honor. And how can you say that was in hot pursuit? Well, in this case, the Coast Guard initially alerted the vessel to heave to when it was 46 miles away from the coast of the Dominican Republic and the Coast Guard pursued the vessel after it failed to heave to and the jurisdiction of the United States was established once it was determined that the Republic of Venezuela did not acknowledge registry in its country. But the vessel was intercepted by the Dutch vessel. Was it intercepted by the Coast Guard? The Coast Guard came along later. Yes, the Coast Guard did come along. So how can it be in hot pursuit? Wasn't there a Coast Guard team on board the Dutch vessel? Yes, there was. And with the permission of the Dutch government? Yes, and there was, I'm sorry, an aircraft observing from the air. And the purpose was to, as a team, to go and to pursue the vessel and to intercept it and eventually the Coast Guard did board the vessel. And in this case, the MDLA, as the court has stated, a constitutional challenge to the MDLEA is not a challenge that can be asserted in an untimely motion because it doesn't address the court's jurisdiction. Of course. Did you make that argument in your brief anywhere? I did. I did. Did you? On page 14, I believe, of my brief, I stated that the district court properly determined that the motion was untimely because. Yeah, well, that's true. But your brief seems to read as just a merits defense of the constitutionality of the statute rather than an argument that the merits are irrelevant about the constitutionality of the statute. I don't really see the brief arguing ever that because he pled and because the motion to dismiss was filed in late fashion, we don't care whether the statute was constitutional. No, I argued, I believe it was on page 14 of my brief, that the reason why the district court properly determined that the motion should have been dismissed was because it attempted to address jurisdiction. I believe it's on page 14 of the government's brief. Can I just ask you one more question? Absolutely. Does the record show the citizenship of the crew? I don't believe so. I don't recall seeing the nationality of the crew. Well, does it show that there were any U.S. citizens on the vessel? No, I don't believe so. Can I just tell you, I don't believe that the record shows it or that you don't believe that there were any U.S. citizens. I don't recall reading that in the record, your honor. Here's what you say on page 14 of the brief. Ultimately, the district denied Diaz's motion to dismiss because it was untimely and because the indictment did not offend the district court's article three subject matter jurisdiction. That's just a statement about what the district court did. Right. Well, I'm asking, where in the brief does the government argue that because of that, we can't address the merits of the constitutionality of the statute? You're saying here that we can't. But in your brief, you never seem to make an argument that they have barred themselves, the defendants barred themselves from making any challenge to the constitutionality of the statute by virtue of his plea or the untimely filing of the motion to dismiss the indictment. Well, my point in what I wrote in the brief was to express that the United States adopts the position of the court that it properly determined that the motion was untimely. And I could have included additional citations from the specific parts of the record in which the court stated that. But I thought by stating that the district court properly determined that the motion was untimely. The rest of the brief, then, is just a dispense of the merits of the constitutionality of the statute, which I would have thought the government's position is we shouldn't be addressing here. Yes, Your Honor. Even if the court does address the merits of the constitutionality of the brief, I believe that the government would still be successful. The government's position is we can't address the merits? Well, I would say that the government's position is we cannot address the merits because the district court properly determined that the motion was untimely. And if we do address the merits of the case, the MDLA was a valid exercise of Congress's power under the Law of Nations Clause. This court, the international agreements are a source of the Law of Nations. And the 1988 United Nations Convention against the illicit traffic and narcotic drugs and that the international community has a deep concern for the rising trend of trafficking and narcotics because it adversely affects the societal and political foundations of society. Can you tell me specifically who are in the Law of Nations? Is there a specific clause, specific article I can look to to read that allows you to have universal jurisdiction in this case? Well, I would point to Article 3 of the 1988 Convention. And I referenced that in my briefing, which the parties to the convention agreed that domestic law should be enacted as necessary to criminalize the offenses of drug trafficking, including manufactured possession with intent to distribute and the like, which the MDLA does directly address. And also in the fact that most nations have have specifically rejected universal jurisdiction for drug offenses. Well, do you understand what I'm talking about? Universal jurisdiction? Yes, I do. It's about the it's about whether or not the international community has condemned a particular offense. Though it's more than just condemned. It has to be more than just condemnation. It has to be horrific condemnation like slavery, like piracy, and some war crimes. Other than that, am I wrong that this has been rejected as far as drug violations is concerned? Well, I believe the court is addressing whether or not drug trafficking is viewed as an international crime. And the drug trafficking in the pre in 70501 of the MDLA addresses the fact that Congress had enacted the legislation because it is a serious threat to the security of the United States. No question about it. And on that there is an agreement that it is a serious crime. The question is whether you can exercise jurisdiction over a foreign vessel in foreign waters involving foreign citizens in a vessel that is not in any way connected to the United States. There is no nexus requirement. This circuit has held in the United States versus New C. Pena and Cardellas Lunas that I'm sorry, not Cardellas Lunas, United States versus New C. Pena that there is no nexus requirement. And therefore, I don't believe that the government is required to show that nexus is a necessary component to find that the MDLA. Wasn't that a plane error case? Yes, it was. If we reach the issue, this is not a plane error case because he raised it. Yes, he did raise it. So we haven't held absent the plane error screen that there's jurisdiction that there's authority to pass the statute. I'm sorry, say that again. Outside the context of a plane error ruling, our circuit has never held that there's authority to pass this statute. Well, in Cardellas Lunas, the. We just held there that it was not a jurisdictional question. Yes, we held it. So on the merits of the constitutional authority to pass the statute, our circuit has been silent other than a ruling about plane error. We said it's not obvious that they lack the authority, but in this case, it was raised so we wouldn't be applying plane error. Of course. Absent the waiver. Absent the waiver. So we have no precedent to say we lack the authority that the Congress lacks the authority. Well, I believe. I wouldn't say this court is without authority. If there is an interpretation, even under plane error or any other. It just doesn't tell you what to do when you don't have to apply plane error. We do it at DeNovo. Then the fact that it's not obvious isn't very relevant. The question is on DeNovo review, do they have the authority? Yes, but Congress, Congress's authority to punish felonies on the high sea is a valid exercise. The MDLA is a valid exercise of Congress's power. Provided there is a U.S. connection. Here there is no U.S. connection that I have heard from the government. Well, the appellant hasn't asserted that there has to be a nexus between the crime and the actual offense and the United States. Well, could the United States, could Congress pass a law prohibiting the selling of white horses in Mongolia? Would they have jurisdiction to do that? Perhaps if there was a treaty with Mongolia. Well, I wouldn't go that far. No, but that is pretty far, Mongolia. That is pretty far. And I would agree with the court. Say nothing of the white horse. The, this court, even the dissenting opinion in Cardellus Luna found that under the necessary and proper, necessary and proper clause of the constitution, the Congress can enact laws to effectuate treaties. But a foreign country cannot give power to Congress that Congress doesn't have under the constitution. Of course. A treaty that gives power to Congress to exercise criminal jurisdiction over foreigners would engage in activity that the United States is approved of in foreign territory is almost irrelevant. Yes, but I would submit that the MD, the 1988 convention permits each party to enact their own domestic laws, which criminalize drug trafficking. It doesn't go so far. There is a provision, article four of the 1988 convention requires the parties to, to analyze how their jurisdiction complies with the constitution and make sure that it comports so that, and it authorizes the, the, the punishing of crimes that are committed internationally. And I'm referring to article three of the convention, paragraph one, A. Look, forget about Mongolia. There is a drug action taking place in Bolivia in which Bolivian citizens are engaged in Colombian citizens and Bolivian citizens in that area. Could the United States apprehend any one of those people and charge them with violation of US laws? You're saying in, in, in Bolivia? No, in international waters. In international waters? I would say yes, that's what the MDLA, I'm sorry, could you, could you repeat it? I just want to make sure that I'm answering correctly. I don't want to go as far as Mongolia. I think it's a boat with cocaine being driven by Bolivians to be delivered in Colombia and it's intercepted by the United States Coast Guard in international waters. And it's a vessel subject to the jurisdiction of the United States. Is that subject to US jurisdiction? If it's a vessel without nationality, yes. No, it's got a Bolivian, it's got a Bolivian flag. And they consent to the enforcement of US laws, I would say yes. Under the MDLA. What about, what about instead of being in international waters, they do it on Colombian territory? I believe that with the consent, that's one of the other aspects of the MDLA 702, I believe, which with the consent of a nation, this sounds very similar to the facts in Balziac, where the parties were exclusively in Panamanian waters and the court rejected the interpretation. Now we're in Colombian territory. Can you extend American law to foreign subjects in another territory? National territory? I would, I believe that the MDLA may permit it if the nation consents. The court doesn't, anyone? It says a vessel registered to an affirmation if the nation has consented or waived objection to the enforcement of the United laws by the United States. It doesn't, I don't believe specifies if the vessel is in foreign waters. And I'm referring to 70502CA1C, which permits a vessel that deems that a vessel is subject to the jurisdiction of the United States if the vessel was registered in a foreign nation if the nation consents or has waived the objection of the enforcement of the United States law by the United States. So yes, the MDLA does authorize that. I think we've run over your time. I just want to make it crystal clear. Government's position is that none of these issues are properly before us? That's correct. And based upon the district court's determination that the motion was untimely. Thank you. Thank you. I think we've got to take a five-minute break. Oh, you have a remoto? Oh, I'm sorry. Pardon me. If it's a passing break the court needs, I will gladly have my rebuttal thereafter, Your Honor. No, go ahead. Very well. Just to clarify, Your Honor, in terms of the nexus question that you were posting to the government, these were one Colombian and four Venezuelan nationals. There were no U.S. citizens. There was no connection between the United States and this vessel. No evidence was on the record as to the alleged substances that were in the vessel or jettisoned off the vessel were headed to the United States. And I believe that that is what the nexus requirement demands. And in terms of the universal jurisdiction, Your Honor, drug trafficking is not recognized under universal jurisdiction. It is crimes such as genocide and piracy, as the court clearly stated. This is a structural problem that it has. And I'm citing U.S. versus Lopez in this case. And that is why we believe the court erred and this should be dismissed. Thank you. Thank you.